# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LAWRENCE SMITH,
    Petitioner,

    v.

COMMISSIONER OF CORRECTION,[1]
    Respondent.

No. 3:14-cv-00916 (SRU)

## RULING DENYING PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Lawrence Smith, is an inmate currently confined at MacDougall-Walker

Correctional Institution in Suffield, Connecticut. He brings this action *pro se* for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254, challenging his 2006 Connecticut conviction on one count

of murder, one count of felony murder, one count of conspiracy to commit murder, one count of

conspiracy to commit robbery and one count of hindering prosecution. For the reasons that

follow, I deny Smith's petition.

## I.    STANDARD OF REVIEW

A federal court will entertain a petition for writ of habeas corpus challenging a state court

conviction only if the petitioner claims that his custody violates federal law or the United States

Constitution. *See* 28 U.S.C. § 2254(a). A claim that a state conviction was obtained in violation

of state law is not cognizable in federal court. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Section 2254(d) "imposes a highly deferential standard for evaluating state-court rulings

and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559

U.S. 766, 773 (2010) (citations and internal quotation marks omitted). A federal court cannot

---

[1] The Clerk shall amend the caption to correctly reflect the title of the defendant as
"Commissioner of Correction."

grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court, unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Th[at] standard . . . is 'difficult to meet.'" *Metrish v. Lancaster*, ___ U.S. ___, 133 S. Ct. 1781, 1786 (2013).

Clearly established federal law is found in holdings—not dicta—of Supreme Court decisions at the time of the state court ruling. *See Howes v. Fields*, 565 U.S. 499, 505 (2012); *Carey v. Musladin*, 549 U.S. 70, 74 (2006). Thus, "[c]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (per curiam) (quoting 28 U.S.C. § 2254(d)(1)). The law may consist of either a "generalized standard" or a "bright-line rule designed to effectuate such a standard in a particular context." *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that held to be applicable by the Supreme Court, or where the state court decides a case differently than the Supreme Court on essentially the same facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court "unreasonabl[y] appli[es]" Supreme Court law when the court correctly identifies the governing law, but unreasonably applies that law to the facts of the case, or when it refuses to extend a legal principle clearly established by the Supreme Court to circumstances intended to be encompassed by the principle. *See Davis v. Grant*, 532 F.3d 132, 140 (2d Cir. 2008). It is not enough that the state court decision is incorrect or erroneous. Rather,

the state court application of clearly established law must be objectively "unreasonable"—a "substantially higher" standard. *See Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). A state prisoner must show that the challenged court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

When reviewing a habeas petition, a federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (standard for evaluating state-court rulings where constitutional claims have been considered on the merits is "highly deferential," affords state-court rulings "the benefit of the doubt," and is "difficult" for a petitioner to meet). In addition, a federal court's "review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.*

## II.      PROCEDURAL HISTORY

In 2001, police officers arrested Smith in connection with the murder of Juan Disla. *See State v. Smith*, 289 Conn. 598, 603 (2008). The State's Attorney initially charged Smith with murder and other offenses. On May 31, 2001, at a probable cause hearing, the State's Attorney filed a substitute information charging Smith with conspiracy to commit murder in violation of Connecticut General Statutes §§ 53a-48(a) and 53a-54a and with kidnapping in the first degree in violation of Connecticut General Statutes § 53a-92. *See id.* at 603; Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, Doc. No. 14, App. C, at 9.

On December 5, 2001, in response to Smith's motion for speedy trial, the State's Attorney informed the court that a material witness would be unavailable to testify because he

was asserting his Fifth Amendment privilege against self-incrimination. *See Smith*, 289 Conn. at 604. The State's Attorney then entered a *nolle prosequi* on each charge pending against Smith pursuant to the missing witness provision of Connecticut General Statutes § 54-56 and Connecticut Practice Book § 39-30. *See id.* at 603. Smith moved to dismiss the charges on the ground that he had been denied his right to a speedy trial, but the trial judge denied the motion. *See id.* at 604. The State of Connecticut subsequently released Smith from custody.

On or about March 10, 2005, a Meriden police detective executed a warrant for Smith's arrest in connection with the murder of Juan Disla. *See id.*; Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, Doc. No. 14, App. B, at 4. On November 15, 2005, the State's Attorney filed a long form information charging Smith with murder in violation of Connecticut General Statutes §§ 53a-8(a) and 53a-54a(a), felony murder in violation of Connecticut General Statutes §§ 53a-48(a) and 53a-54c, conspiracy to commit murder in violation of Connecticut General Statutes §§ 53a-48(a) and 53a-54a, conspiracy to commit robbery in the first degree in violation of Connecticut General Statutes §§ 53a-48(a) and 53a-134(a)(2) and hindering prosecution in the first degree in violation of Connecticut General Statutes § 53a-165(a)(5). *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, Doc. No. 14, App. B, at 10–11.

On January 11, 2006, a jury in the Connecticut Superior Court for the Judicial District of New Haven found Smith guilty of all five criminal charges. *See id.* at 41. On March 23, 2006, a judge sentenced Smith to a total effective sentence of eighty years of imprisonment. *See id.* at 41–42. On May 17, 2006, Smith's sentence was revised to reflect a total effective sentence of seventy-five years of imprisonment. *See id.* at 8, 42.

Smith appealed his convictions on two grounds. *See Smith*, 289 Conn. at 602. First, he claimed that the trial judge violated his right to a speedy trial when he denied Smith's motion to

dismiss the charges against him. *See id.* at 604. Second, Smith asserted that the trial judge violated his rights under the Confrontation Clauses of both the federal and state constitutions (as well as state evidentiary rules) when the judge admitted a recording of a conversation between Smith's co-conspirator and the co-conspirator's cellmate. *See id.* at 613–14. On November 25, 2008, the Connecticut Supreme Court affirmed Smith's conviction. *See id.* at 633.

Smith claims that he then filed a petition for certiorari seeking review by the United States Supreme Court. He states that the Supreme Court declined to hear his appeal, but does not provide a case citation or the date of the decision denying the petition for certiorari. *See* Pet. Writ Habeas Corpus, Doc. No. 1, at 4.

On November 26, 2008, Smith challenged his conviction by filing a state petition for a writ of habeas corpus in the Connecticut Superior Court for the Judicial District of Tolland at Rockville. *See* Pet. Writ Habeas Corpus, Doc. No. 1, at 5. In a second amended petition filed on September 13, 2011, Smith raised five grounds, including claims of ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and actual innocence. *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, Doc. No. 14, App. H, at 4–21. A Superior Court judge held hearings on the claims in the second amended petition on September 29 and October 17, 2011. *See id.*, App. P. On January 20, 2012, Smith's amended petition was granted solely with respect to the ground that trial counsel was ineffective in failing to advise Smith regarding sentence review and in neglecting to file a motion for sentence review. The Superior Court ordered that Smith's right to sentence review be restored. With respect to all other grounds, however, the court denied the amended petition. *See Smith v. Warden,* 2012 WL 447640, at *8–*10 (Conn. Super. Ct. Jan. 20, 2012).

Smith appealed the denial of the other four grounds in the amended habeas petition. *See Smith v. Comm'r of Corr.*, 148 Conn. App. 517, 519 (2014). On March 4, 2014, the Connecticut Appellate Court affirmed the decision of the trial court. *See id.* at 537. On May 21, 2014, the Connecticut Supreme Court denied certification to appeal the decision of the appellate court. *See Smith v. Comm'r of Corr.*, 312 Conn. 189 (2014).

Smith filed the present federal petition on June 23, 2014. Pet. Writ Habeas Corpus, Doc. No. 1. The Commissioner of Correction has filed a memorandum in opposition to the petition. Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, Doc. No. 14.

## III.    FACTUAL BACKGROUND

During Smith's appeal of his conviction, the Connecticut Supreme Court determined that the jury at Smith's trial reasonably could have found the following facts:

> On July 21, 2000, Robert Marrow and Jonathan Rivers, acting on the orders of Miguel Estrella, a drug dealer in Meriden, met the victim, Juan Disla, who was a rival drug dealer, at a Dairy Queen in Meriden to rob him. During the course of the robbery, Marrow shot the victim in the leg. Marrow contacted Estrella for instructions and was told to drive to [Smith's] house. Marrow and Rivers took the victim, whom they had bound with duct tape, to [Smith's] house, where Estrella and [Smith] removed money and cocaine from the victim's vehicle. Thereafter, [Smith], Estrella, Rivers and Marrow drove the victim to a remote location in a wooded area in the Higganum section of Haddam, where the victim was suffocated to death. The four men left the victim's body in the woods and returned to Meriden. That evening, Estrella, Marrow, Rivers and some friends drove the victim's car to New York state and abandoned it on the highway, where it eventually was vandalized.
>
> The state also offered evidence, which [Smith] unsuccessfully challenges in this appeal, to establish the following additional facts. Two days after the murder, Estrella and [Smith] returned to the location of the victim's body with a chainsaw, plastic buckets and several containers of acid. [Smith] used the chainsaw to dismember the body while Estrella watched. [Smith] and Estrella then placed the body parts in the buckets and covered them with acid to destroy them. The petitioner subsequently disposed of any remains. The victim's body was never recovered, and no bloodstains, DNA or bones ever were found.

*Smith*, 289 Conn. at 602–03.

# IV.    DISCUSSION

Smith asserts the same two grounds that he raised on direct appeal of his conviction and one of the grounds that he raised in his state habeas petition. He argues that: (1) the trial judge violated his right to speedy trial by denying Smith's motion to dismiss the charges against him; (2) the trial judge violated his rights under the Confrontation Clause of the Sixth Amendment by permitting the prosecution to introduce a tape-recorded conversation between one of Smith's alleged co-conspirators and the co-conspirator's cellmate; and (3) his trial counsel violated his right to effective assistance of counsel by failing to offer certain evidence and improperly advising Smith not to testify at trial.

## A.    Speedy Trial

Smith contends that the State of Connecticut violated his right to speedy trial by permitting the threat of prosecution to hang over him for more than three years after the *nolle prosequi* in December 2001 before arresting him again in 2005. Thus, Smith argues that the trial judge erred in denying his motion to dismiss the charges filed pursuant to his arrest in 2005.

The Connecticut Supreme Court concluded that the following additional facts and procedural history were relevant to its consideration of Smith's speedy trial claim:

> As we previously have indicated, following the state's nolle of the charges against [Smith] on the basis of a representation from Estrella's defense counsel that Estrella was unavailable because he intended to invoke his fifth amendment privilege against self-incrimination if called to testify, the court denied [Smith's] motion to dismiss the charges and ordered that he be released. When [Smith] subsequently was arrested in 2005 in connection with Disla's murder, the state charged him again with conspiracy to commit murder and also charged him with murder, felony murder, conspiracy to commit robbery in the first degree and hindering prosecution in the first degree. On May 5, 2005, [Smith] moved to dismiss the charges, claiming that his right to a speedy trial had been violated because the state first had charged him with crimes in connection with Disla's murder four years previously and, through the entry of the nolle prosequi, indefinitely had postponed resolution of those charges. [Smith] contended that, at the December 5, 2001 proceeding, the trial court improperly had accepted the

state's representation that its essential witness was unavailable due to his anticipated assertion of his fifth amendment right to remain silent. [Smith] asserted that the trial court was obligated to inquire further into the unavailability of the witness before it found him unavailable, noting that the state could have granted the witness immunity and thus rendered him available to testify by removing the threat of self-incrimination. Because the trial court had not done so, [Smith] contended that it improperly had made a finding of unavailability, thereby rendering the entry of the nolle prosequi pursuant to § 54-56b improper. Further, [Smith] contended that, in accordance with this court's holding in *Cislo* [*v. Shelton*, 240 Conn. 590 (1997)], the nolle effectively was transformed into a dismissal because more than thirteen months had elapsed since the entry of the nolle, *see* Conn. Gen. Stat. § 54-142a(c), and such dismissal barred his reprosecution.

The trial court, Damiani, J., denied [Smith's] motion to dismiss. The court gave the following reasons for its ruling. First, the state had made the necessary representations to allow the nolle prosequi to enter when it informed the court that the witness was unavailable on the basis of his assertion of his fifth amendment privilege against self-incrimination. The court stated that it was not necessary to compel a witness to appear formally and assert his right against self-incrimination to support the entry of the nolle, and that it was beyond the court's authority to compel the state to offer immunity to a witness, as [Smith] had suggested. The nolle therefore properly had been entered in accordance with § 54-56b. Second, the court noted that, with respect to the holding in *Cislo*, the nolle would indeed, after thirteen months had passed, become the functional equivalent of a dismissal, but the dismissal would be *without prejudice* and thus would not bar future prosecution. Finally, the court noted that, with the exception of the conspiracy to commit murder charge, [Smith] had been charged with new offenses, uncharged at the time of the earlier arrest. Consequently, even if the one overlapping charge, conspiracy to commit murder, were to be eliminated, [Smith] still would be subject to charges of murder, felony murder, conspiracy to commit robbery in the first degree and hindering prosecution in the first degree.

*Smith*, 289 Conn. at 606–08.

During pre-trial proceedings in May 2005, counsel for Smith relied on state law cases in presenting and arguing Smith's motion to dismiss the criminal charges on the ground that the State of Connecticut had violated his right to a speedy trial. *See id.* at 604–13; Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, Doc. No. 14, App. B, at 18–39. On appeal, Smith's attorney continued to rely primarily on state law, but also made reference to the factors set forth by the

federal Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). *See Smith*, 289 Conn. at 604–13; Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, Doc. No. 14, App. C.

In reviewing a habeas petition challenging a state conviction, a federal court may only grant relief if the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, federal habeas relief is not available to remedy a violation of state law. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (per curiam) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." (emphasis in original)); *Estelle*, 502 U.S. at 67 ("We have stated many times that federal habeas corpus relief does not lie for errors of state law." (internal quotation marks omitted)).

The attorney who represented Smith during pre-trial proceedings argued the speedy trial claim based entirely on Connecticut General Statutes § 54-56b and the interpretation of that statute by Connecticut courts. *See Smith*, 289 Conn. at 604–13 (reviewing and interpreting Connecticut General Statutes § 54-56b, and Connecticut cases); Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, Doc. No. 14, App. B. To the extent that Smith challenges the trial court's denial of his motion to dismiss based on the judge's interpretation and application of state law, I have no authority to hear that claim. *See Estelle*, 502 U.S. at 67–68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Engle v. Isaac*, 456 U.S. 107, 119–21 & n.21 (1982) (challenge to correctness of self-defense instructions under state law provided no basis for federal habeas relief); *Ponnapula v. Spitzer*, 297 F.3d 172, 181–83 (2d Cir. 2002) (declining to review challenge to appellate court's interpretation of the terms in a state statute because it was a question of state law, and noting that court was bound by the state court's interpretation in reviewing the petitioner's federal constitutional claim). Thus, I

deny Smith's petition with regard to his argument that the trial judge misapplied state law in denying Smith's motion to dismiss the charges.

On appeal to the Connecticut Supreme Court, conversely, Smith's attorney not only contended that the trial judge improperly applied state law in denying Smith's motion to dismiss, but also made reference to the factors for identifying violations of a defendant's right to a speedy trial set forth by the United States Supreme Court in *Barker v. Wingo*. In addressing Smith's assertion that the trial judge improperly denied his motion to dismiss on speedy trial grounds, the Connecticut Supreme Court construed Smith as arguing that the trial court violated the *Barker* factors. The Court declined to review Smith's claim because his counsel in the trial court had not provided an adequate record for review. Specifically, counsel had not asked the trial judge to apply the factors in *Barker* in deciding Smith's motion to dismiss. Accordingly, the Commissioner argues that Smith's federal claim has been procedurally defaulted because the Connecticut Supreme Court declined to review the merits of the claim on the basis of an adequate and independent state procedural rule.

Under the procedural default doctrine, a federal court will not review the merits of a claim raised in a habeas petition—including a constitutional claim—if the state court declined to address the claim because the prisoner failed to meet an "adequate and independent . . . state procedural requirement." *See Walker v. Martin*, 562 U.S. 307, 315–16 (2011) (citations omitted). A state rule or requirement must be "firmly established and regularly followed" by the state in question to qualify as an adequate procedural ground. *See Beard v. Kindler*, 558 U.S. 53, 60–61 (2009) (internal quotation marks and citation omitted). A state court decision will be "independent" when it "fairly appear[s] to rest primarily on state procedural law." *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006) (citation omitted).

There are exceptions to the doctrine that allow otherwise procedurally defaulted claims to be heard in federal court. Despite having defaulted on a federal claim in state court pursuant to an independent and adequate state procedural rule, a state prisoner can obtain federal habeas review if (i) he can demonstrate "cause" for the default and actual "prejudice" resulting from the default, or (ii) he can show that failure to consider the claim will result in a "fundamental miscarriage of justice." *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

Here, the Connecticut Supreme Court expressly relied on a state procedural rule when declining to review Smith's claim. *See Smith*, 289 Conn. at 613 (noting that Smith had not asked the trial court to engage in evaluation of *Barker* factors in order to make factual findings necessary to create a record for review, and citing Connecticut Practice Book §§ 60-5 and 66-5). Furthermore, the procedural rules were definite, well-established and regularly applied at the time of the Connecticut Supreme Court's decision on the petitioner's unpreserved claim. *See, e.g.*, Connecticut Practice Book § 60-5 ("It is the responsibility of the appellant to provide an adequate record for review as provided in Section 61-10"); *Bragdon v. Sweet*, 102 Conn. App. 600, 605–06 (2007) (declining to review claim on appeal because appellant did not meet burden of providing adequate record for review as required by Connecticut Practice Book § 61-10); *Narumanchi v. Destefano*, 89 Conn. App. 807, 815 (2005) ("It is axiomatic that the appellant must provide this court with an adequate record for review. Because the plaintiff failed to satisfy that burden, we decline to review his claim." (citing Connecticut Practice Book § 61-10)); *State v. Shannon*, 61 Conn. App. 543, 544 n.1 (2001) (per curiam) (declining to review speedy trial claim because defendant failed to sufficiently develop claim in trial court under standard set forth in *Barker*). Because the Connecticut Supreme Court held that Smith had procedurally defaulted on his claim based on independent and adequate state law grounds, I cannot review Smith's

claim unless he can show "cause and prejudice" or "a fundamental miscarriage of justice." *See Edwards*, 529 U.S. at 451.

To establish "cause" to excuse procedural default, Smith must identify "some external impediment preventing counsel from constructing or raising the claim." *Murray v. Carrier*, 477 U.S. 478, 492 (1986). Cause may be shown by, for example, proof of "interference by officials" that impeded compliance with state rules, or "a showing that the factual or legal basis for a claim was not reasonably available to [defense] counsel." *See McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991). Smith has failed to allege any external cause to excuse the procedural default.

Smith contends that Attorney William Gerace—who represented him when he was first arrested in 2001 in connection with the death of Juan Disla—was ineffective for failing to appeal the denial of Smith's motion to dismiss the charges after the prosecutor moved for the entry of a *nolle prosequi*. *See* Pet'r's Resp. Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, Doc. No. 16, at 1–2. Attorney Gerace's allegedly deficient performance during the *first* prosecution, however, cannot constitute cause for Smith failing to raise the *Barker* factors during the *second* prosecution. Smith was represented by a different attorney in connection with his arrest in 2005. Furthermore, although deficient performance by an attorney can constitute cause for failing to comply with a state's procedural rule, "[a]ttorney error short of ineffective assistance of counsel, does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial." *Murray*, 477 U.S. at 492. Moreover, "a claim of ineffective assistance" must be raised in a state court proceeding "as an independent claim before it may be used to establish cause for a procedural default." *Id.* at 489. Hence, a petitioner must have properly presented and exhausted the ineffective assistance of counsel claim in state court before it will be considered as cause to excuse procedural default. *See Edwards*, 529 U.S. at 453. Smith's state habeas petition

did not raise a claim of ineffective assistance of counsel with regard to Attorney Gerace's performance in the first prosecution. *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, Doc. No. 14, App. H, at 4–21.

Smith's state habeas petition did raise claims of ineffective assistance of pre-trial, trial, and appellate counsel in the second prosecution. *See id.* Specifically, Smith claimed that his attorneys failed to argue the speedy trial claim in light of the factors set forth in *Barker*. *See id.* The present petition, however, does not include a claim of ineffective assistance of counsel on the grounds that trial and appellate counsel erred by declining to raise the *Barker* factors.[2] Nor does Smith argue that ineffective performance of pre-trial, trial, or appellate counsel in connection with the second prosecution constitutes cause to excuse procedural default of his speedy trial claim based on the factors in *Barker*.

---

[2] Even if Smith had raised an ineffective assistance of counsel claim in the present petition, I could not conclude that the state courts had unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984), in deciding that Smith's attorneys were effective. The attorney who represented Smith before trial, the attorney who represented him at trial and the attorney who represented him on direct appeal all testified at the state habeas hearing. *See Smith*, 2012 WL 447640, at *4–*6. The habeas judge concluded that Smith had failed to demonstrate that the decision of pre-trial counsel to file a motion to dismiss only on state law grounds was not reasonable or sound, or that such a decision fell below the objective standard of reasonableness. *See id.* at *4. The judge also concluded that the decision by trial counsel not to file a second motion to dismiss on speedy trial grounds was reasonable. *See id.* After considering the testimony of appellate counsel, the judge further determined that the decision not to raise a *Barker* argument was based on a thorough review of all the claims and court documents, as well as the attorney's conclusion that Smith had other, stronger arguments that stood a better chance of success on appeal. *See id.* at *5–*6. Thus, the habeas judge concluded that Smith's pre-trial counsel, trial counsel, and appellate counsel had not been ineffective with regard to their decisions whether to raise a speedy trial argument based on the factors in *Barker*. *See id.* at *4–*6. The Connecticut Appellate Court affirmed the decision of the habeas judge on all grounds of ineffective assistance of pre-trial, trial, and appellate counsel. *See Smith*, 148 Conn. App. at 523–32. Thus, Smith has not shown that the ineffective performance of counsel constituted cause to excuse procedural default with regard to his violation of speedy trial claim based on the factors in *Barker*.

Smith identifies no other impediments that might constitute cause to excuse his procedural default of the speedy trial claim based on the factors in *Barker*. Where a petitioner has not shown cause, the court need not address the prejudice prong of the procedural default standard. *See McCleskey*, 499 U.S. at 502.

Nor has Smith shown that failure to consider this claim would result in a fundamental miscarriage of justice, that is, "the conviction of one who is actually innocent." *See Murray*, 477 U.S. at 496. To meet this exception, Smith must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup v. Delo*, 513 U.S. 298, 316 (1995).

To establish a credible claim of actual innocence, a petitioner must support his claim "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. Actual innocence requires a showing of factual innocence, not "legal innocence." *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). In response to the Commissioner's procedural default argument, Smith claims that he is, in fact, actually innocent. See Pet'r's Resp. Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, Doc. No. 17, at 2. Testimony in various forms was introduced by the prosecutor at trial to show Smith's involvement in robbing and murdering the victim and disposing of the body. Smith did not testify at trial, and he has not submitted any new evidence to support his allegation that he is innocent of the charges for which he was convicted.[3] Because Smith has not shown cause or a fundamental miscarriage of justice, the claim of error on the part

---

[3] As indicated above, Smith raised a claim of actual innocence in his state habeas petition. The habeas judge denied the claim because the petitioner did not present any evidence at trial or brief the claim. *See Smith*, 2012 WL 447640, at *1, *10 & n.4. Smith did not raise his actual innocence claim on appeal from the denial of the habeas petition. *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, Doc. No. 14, App. I.

of the trial judge set forth in ground one of the petition is procedurally defaulted and cannot be reviewed. I deny Smith's petition for a writ of habeas corpus with respect to that ground.

B.    Confrontation Clause

Smith also argues that the trial judge deprived him of his Sixth Amendment right to confront witnesses when a tape-recorded conversation between one of his alleged co-conspirators, Miguel Estrella, and Estrella's cellmate, Wayne Williams, was introduced at trial. Smith claims that the tape contained hearsay and was fabricated.

The Connecticut Supreme Court concluded that the following additional facts and procedural history were relevant to its consideration of Smith's Confrontation Clause claim:

> In September, 2000, Williams, a Jamaican citizen, was in federal custody for drug violations. Estrella was also in custody in the Hartford correctional center on an unrelated drug charge and was being housed in the same cell as Williams. During this time, Williams approached federal authorities, offering information about statements Estrella had made to him regarding Disla's murder. Williams agreed to wear a recording device and elicit incriminating statements from Estrella in exchange for favorable treatment. On October 4, 2000, Williams wore the device and taped his conversations with Estrella. As a result of his cooperation, despite facing a sentence ranging from five years to life in prison under the federal sentencing guidelines, Williams was sentenced to time served, a total of seventeen months in prison. He was subsequently deported to Jamaica.

> The recording, which was more than four hours in length, was introduced at trial. In the recording, Estrella recounted Disla's murder in great detail. He explained that he had been the leader who planned the murder, organized his coconspirators, and was present throughout the murder and subsequent destruction of the body. Estrella described how the [petitioner] had dismembered the body with a chainsaw and participated in its destruction by placing it in acid, and then Estrella bragged to Williams that "if you want something done right, we did it right." Estrella predicted that because they had done the job so well, the crime would never be solved unless the police were able to convince all four men who had participated to confess. Throughout the recording, Estrella portrayed [Smith] as a willing participant, fully involved in the robbery and murder of the victim, who took the lead in dismembering and destroying the body, kept portions of it soaking in acid at his home to destroy it completely, and, after it had liquefied, finally disposed of it in an unknown location.

Although Williams had been deported in 2001, he returned to the United States at some point prior to [Smith]'s probable cause hearing and thereafter was arrested and held in custody by federal authorities in Connecticut at the time of [Smith's] hearing. The state never called Williams as a witness, and Estrella was unavailable as a witness because he had refused to testify pursuant to his fifth amendment privilege against self-incrimination.

At the probable cause hearing, the state introduced into evidence the recording of Estrella's conversations with Williams as a statement against penal interest. The state stipulated that Williams was acting as a police agent. The defendant conceded that Estrella's statements were nontestimonial but argued that the admission of his statements could not satisfy the indicia of reliability necessary under *Ohio v. Roberts*, 448 U.S. 56, 66 (1980). The trial court, Gold, J., ruled that Estrella's statements were admissible to establish probable cause because they were nontestimonial and they were reliable under the totality of the circumstances as required under *Roberts*. The court found that: the statements were squarely against Estrella's penal interest because they directly implicated him in an unsolved murder; they were made in a private manner and location (the prison cell); they were intended to be confidential, as evidenced by Estrella's tone and manner; and the two men had formed a sufficiently strong bond that confidences between them would not be unusual. The court also noted that, although at times Williams seemed to lead some of the discussion, Estrella was "a willing and active participant . . . who provided nearly all of the substance of the discussion." The court noted the fact that, in eleven pages of the transcript of the recording, Estrella had provided a highly detailed account of the crime, while Williams had responded only with meager "mm-hmms." The court, therefore, minimized Williams' role in the conversation and concluded that "the recorded statement belies any claim that Estrella was not . . . the active participant in the discussion and the party who offered these detailed statements, against his own penal interest." In light of all of these factors, the court concluded that Estrella's statements "bore the particularized guarantees of reliability required by the confrontation clause."

At trial, [Smith] challenged the admission of the recording, once again conceding that Estrella's statements were nontestimonial. The trial court, Alexander, J., incorporated [Smith's] prior arguments from the probable cause hearing and agreed with Judge Gold's ruling at the hearing, admitting the recording into evidence.

*Smith*, 289 Conn. at 615–17.

A defendant's right to confront witnesses in a criminal proceeding is guaranteed by the

Confrontation Clause of the Sixth Amendment. *See* U.S. Const. amend. VI ("In all criminal

prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against

him . . . ."). The primary purpose of the Confrontation Clause is to prevent out-of-court statements from being used against a criminal defendant in lieu of in-court testimony subject to the scrutiny of cross-examination. *See Douglas v. Alabama*, 380 U.S. 415, 418–19 (1965); *Crawford v. Washington*, 541 U.S. 36, 50–59 (2004).

In *Crawford*, the Supreme Court held that the Sixth Amendment's Confrontation Clause bars admission against a criminal defendant of a previously made out-of-court "testimonial" statement by an unavailable witness that was not subject to cross-examination by the defendant. *See* 541 U.S. at 68. The Court explained that "witnesses" under the Confrontation Clause are those "who bear testimony," and "testimony" is defined as "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51 (internal quotation marks and brackets omitted). The Court elected to "leave for another day any effort to spell out a comprehensive definition of 'testimonial,'" however. *Id.* at 68.

In more recent cases, the Supreme Court has employed the "primary purpose" test to define when statements are "testimonial" or "nontestimonial." *See Davis v. Washington*, 547 U.S. 813, 822 (2006). "Statements are nontestimonial," for instance, "when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* A statement is testimonial "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.*

Subsequently, the Supreme Court further defined the "primary purpose" test and emphasized that a court must consider "all of the relevant circumstances." *Michigan v. Bryant*, 562 U.S. 344, 369 (2011). In determining whether a statement is testimonial, "the question is

whether in light of all the circumstances, viewed objectively, 'the primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Ohio v. Clark*, ___ U.S. ___, 135 S. Ct. 2173, 2180 (2015) (quoting *Bryant*, 562 U.S. at 358). Thus, under Supreme Court precedent, "a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial." *Id.* If a primarily testimonial purpose does not exist, then "the admissibility of [the nontestimonial] statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *Bryant*, 562 U.S. at 359 (citation omitted).

In analyzing this claim, the Connecticut Supreme Court applied the standards established in *Crawford* and *Davis*. Because it applied the correct legal standards, the decision is not "contrary to" federal law. *See* 28 U.S.C. 2254(d)(1); *Lurie v. Wittner*, 228 F.3d 113, 127 (2d Cir. 2000. Thus, I must decide whether the analysis of the Connecticut Supreme Court was an "unreasonable application" of federal law as articulated by the United States Supreme Court. *See Wittner*, 228 F.3d at 128.

### 1. *Williams's Statements*

In analyzing Smith's Confrontation Clause claim, the Connecticut Supreme Court reviewed the transcript of the conversation between Williams and Estrella. *See Smith*, 289 Conn. at 626. The Court determined that Williams's statements fell into three different categories: "(1) non-assertive vocalizations . . . ; (2) questions Williams directly posed to Estrella about the crime; and (3) statements Williams made that directly implicated Estrella or [Smith] in the commission of the crime." *Id.* The Connecticut Supreme Court concluded that the first set of statements were nontestimonial because they provided context for Estrella's statements and could not be categorized as assertions of particular facts, but were merely common vocal acknowledgements used in conversations. *See id.*

The second category of vocalizations, the Court held, were statements that "were used solely for the purpose of providing the context within which Estrella's answers could be understood." *Id.* at 626. Thus, they were not assertions, but rather requests intended to elicit information. *See id.* The Court concluded that those statements did not constitute "solemn declaration[s] or affirmation[s] made for the purpose of establishing or proving a fact" and were therefore nontestimonial. *Id.* (quoting *Crawford*, 541 U.S. at 51).

The third set of vocalizations were assertive statements. The Connecticut Supreme Court concluded that some of those statements were hearsay and offered for their truth. *See id.* at 627. In determining whether the hearsay statements were testimonial, the Court examined whether Williams reasonably expected that those statements would be used in a later prosecution. *See id.* The Court deemed it clear that Williams understood that the assertive statements made in his conversation with Estrella would be offered in a subsequent prosecution. *See id.* Thus, the statements were held to be testimonial. Because Smith had not been able to cross-examine Williams regarding the statements, the Court concluded that the statements' admission into evidence violated Smith's rights under the Sixth Amendment. *See id.* at 627–28.

The Court then decided whether the admission of those statements constituted harmless error. *See id.* In its review of the trial court's determination that admission of the assertive statements by Williams constituted harmless error, the Connecticut Supreme Court applied state cases with holdings that mirror applicable federal Supreme Court decisions. *See id.* at 628–29. Because the Connecticut Supreme Court applied the correct legal principles, its decision is not "contrary to" clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that state court need not cite nor even be aware of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them"). Thus, I

consider whether the analysis of the Connecticut Supreme Court was an "unreasonable application" of federal law. *See Wittner*, 228 F.3d at 128

In *Chapman v. California*, 386 U.S. 18 (1967), the United States Supreme Court set forth a standard for district courts to apply when assessing on direct appeal the prejudicial impact of constitutional error in a state court criminal trial. The Supreme Court held that a district court should consider constitutional error to be harmless only if the court was "able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24. In *Brecht v. Arbrahamson*, 507 U.S. 619 (1993), the Supreme Court considered whether the standard in *Chapman* should apply to collateral review of state court judgments under 28 U.S.C. § 2254. The Court decided that the *Chapman* standard was too onerous and adopted a more forgiving standard for habeas cases. *See id.* at 635–38. *Brecht* held that a district court should find an error harmless unless it has "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 637. In *Fry v. Pliler*, 551 U.S. 112 (2007), the Supreme Court clarified that "in [section] 2254 proceedings[,] a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*, whether or not the state appellate court recognized the error and reviewed it for harmlessness." *Id.* at 121–22.

The Connecticut Supreme Court applied the *Chapman* standard in assessing whether the error in admitting Williams's assertive statements was harmless.[4] *See Smith*, 289 Conn. at 628 ("state bears burden of proving that error is harmless beyond a reasonable doubt"). The Court considered how important the testimony of the witness was to the prosecution's case; "whether

---

[4] Although the Connecticut Supreme Court applied the *Chapman* standard to determine harmlessness, the factors that it considered were also those that a court should consider under *Brecht* when determining whether error is harmless. *See Fry v. Pliler*, 551 U.S. 112, 120 (2007) (noting that the test in *Brecht* "obviously subsumes the [test in *Chapman*]").

the testimony was cumulative"; whether evidence that either corroborated or contradicted the testimony of the witness on material issues existed; whether the court permitted other cross-examination of the witness; and how strong the prosecution's case was overall. *See id.* at 628. Additionally, the Court considered whether the evidence had any impact on the jury or on the outcome of the trial. The Court acknowledged that if the statements had a tendency to influence the decision of the jury, they could not be considered harmless. *See id.* at 628.

Applying those factors, the Court held that Williams's statements were not very important to the prosecutor's case, because there was no evidence that Williams had any personal knowledge of the circumstances surrounding the killing of the victim. *See Smith*, 289 Conn. at 628–29. In fact, the statements were merely his own opinion or repetitive of statements that had already been made by Miguel Estrella or another source. *See id.* at 629. The few assertive statements made by Williams were unsupported by any facts and were also cumulative of the very detailed statements made by Estrella with regard to Smith's participation in the killing. *See id.* Further, Williams's statements were not mentioned by the prosecutor in his arguments to the jury. *See id.* Thus, the Court concluded that the statements were harmless because they were cumulative of other testimony, there was other overwhelming evidence of the role of Smith in the victim's death, and the statements did not impact the jury's verdict. *See id.*

After considering the record, I cannot conclude that the Connecticut Supreme Court unreasonably applied federal law either with regard to its determination that the majority of Williams's statements were nontestimonial, or with respect to its harmless error review. I deny Smith's petition with regard to Williams's statements.

2. *Estrella's Statements*

During the probable cause hearing in state court, the State of Connecticut stipulated that Williams was acting as a police agent during his tape-recorded conversation with Estrella. *See id.* at 616. At both the probable cause hearing and at trial, Smith conceded that Estrella's statements were nontestimonial, but argued that the statements were unreliable under the Supreme Court's decision in *Ohio v. Roberts*, 448 U.S. 56 (1980). *See Smith*, 289 Conn. at 616–17. Thus, Smith contended that the admission of Estrella's statements violated his rights under the Confrontation Clause of the Sixth Amendment and the Connecticut Rules of Evidence. The trial judge found that the statements were admissible, and admitted them, because they were nontestimonial and were sufficiently reliable under the totality of the circumstances test required by *Roberts*. *See id.* at 616–17.

On direct appeal, Smith again argued that the admission of Miguel Estrella's tape-recorded statements, although nontestimonial, violated his right to confront witnesses because the statements were not sufficiently reliable under *Roberts* and because they violated Connecticut Code of Evidence § 8-6(4). *See Smith*, 289 Conn. at 630 & n.27. With respect to Smith's argument that Estrella's statements violated his confrontation rights under the Sixth Amendment, the Connecticut Supreme Court acknowledged that nontestimonial statements are not barred from admission by the Sixth Amendment's Confrontation Clause under federal Supreme Court precedent. *See id.* (citing *Davis*, 547 U.S. at 821). In view of Smith's concession that Estrella's statements were nontestimonial, the admissibility of the statements was governed by state rules of evidence rather than the Confrontation Clause of the Sixth Amendment. *See Bryant*, 562 U.S. at 359 (If a primary testimonial purpose does not exist, "the admissibility of [the nontestimonial] statement is the concern of state and federal rules of evidence, not the Confrontation Clause.")

(citing *Davis*, 547 U.S. at 823–24). Thus, the Court concluded that the trial court did not violate Smith's Sixth Amendment rights by admitting Estrella's nontestimonial statements.

The Connecticut Supreme Court's holding that Estrella's statements were nontestimonial and that their admission into evidence did not violate Smith's confrontation rights was not an unreasonable application of Supreme Court case law or an unreasonable determination of the facts. Therefore, I deny Smith's petition with regard to his argument that the admission of Estrella's statements violated the Confrontation Clause of the Sixth Amendment.

The Connecticut Supreme Court also considered Smith's claim that the admission of the statements violated the Connecticut Rules of Evidence, and concluded that the trial judge had not abused his discretion in admitting the statements under state evidentiary rules. To the extent that Smith challenges the Connecticut Supreme Court's evaluation of the statements' admission under Connecticut law, I cannot review such a claim. *See Wilson*, 562 U.S. at 5 ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." (emphasis in original)); *Estelle*, 502 U.S. at 67–68 ("We have stated many times that federal habeas relief does not lie for errors of state law." (internal quotation marks omitted)). Accordingly, I deny Smith's petition with regard to Estrella's statements.

C.      Ineffective Assistance of Trial Counsel

Smith argues that his trial counsel was ineffective in refusing to let him testify at trial. Smith contends that counsel should have permitted him to testify because the state's evidence consisted almost exclusively of statements of convicted felons. Smith also argues that counsel

was ineffective in failing to present evidence regarding muriatic acid and whether it can dissolve human body parts.[5]

An ineffective assistance of counsel claim is reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, a petitioner must demonstrate, first, that counsel's conduct "fell below an objective standard of reasonableness" established by "prevailing professional norms," and, second, that this deficient performance caused prejudice to him. *Id.* at 687–88.

To satisfy the prejudice prong of the *Strickland* test, Smith must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The probability must be "sufficient to undermine confidence in the outcome" of the trial. *Id.* The court evaluates counsel's conduct at the time the decisions were made, not in hindsight, and affords substantial deference to counsel's decisions. *See Rompilla v. Beard*, 545 U.S. 374, 381 (2005). To prevail, Smith must demonstrate *both* "deficient performance" *and* "sufficient prejudice." *See Strickland*, 466 U.S. at 700. Thus, if either part of the standard is lacking, I need not consider the remaining part. *See id.* at 697, 700.

In analyzing Smith's ineffective assistance of counsel claims, the Connecticut Superior Court judge and the Appellate Court judges applied the standard established in *Strickland*.

---

[5] In his description of the ineffective assistance of counsel claim, Smith includes statements regarding trial counsel's refusal to conduct an investigation, failure to speak to him for longer than eleven minutes prior to trial and doodling during the trial. *See* Pet. Writ Habeas Corpus, Doc. No. 1, at 13. The Commissioner notes that these allegations of ineffective assistance have not been exhausted in the state court habeas petition. I agree with the Commissioner. Although there is some testimony by Smith at his state habeas trial regarding these allegations of deficient assistance of trial counsel, the allegations were not raised in the amended state habeas petition or on appeal of the denial of the ineffective assistance of counsel claims. *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, Doc. No. 4, App. H & App. I; *id.* App. P, Habeas Tr. 82, 83, 165–68 (Sept. 29, 2011). Hence, I am unable to review these unexhausted allegations of ineffective assistance of trial counsel.

Because the state courts applied the correct legal standard, their decisions were not "contrary to . . . clearly established Federal law" under section 2254(d)(1).

1. *Advice Regarding Decision to Testify at Trial*

Smith contends that he wanted to testify at trial, but trial counsel refused to permit him to do so. It is well settled that a defendant in a criminal case has a constitutional right to testify on his own behalf. *See Rock v. Arkansas*, 483 U.S. 44, 49 (1987). Furthermore, the defendant has "the ultimate authority" to determine whether to exercise or waive the right to "testify in his or her own behalf." *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (internal quotation marks and citation omitted).

During the state habeas proceedings, Smith acknowledged that he had discussed the issue of whether he would testify with his attorney prior to the completion of the criminal trial, his attorney informed him that it was Smith's decision to testify or not to testify, and Smith chose not to testify. *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, Doc. No. 14, App. P, Habeas Tr. 70–72, 127, 144–45 (Sept. 29, 2011). In addition, Smith conceded that the trial judge had canvassed him regarding his right to testify or not to testify in his criminal case. *See id.*

The habeas judge found that trial counsel had reviewed the evidence with Smith and had discussed what the petitioner might testify about at trial on multiple occasions. *See Smith*, 2012 WL 447640, at *7. Further, the habeas judge observed that trial counsel's strong advice to Smith not to testify was reasonable because Smith's testimony would likely be inconsistent, might contain damaging incriminating details, and would definitely be subject to potentially damaging cross-examination. *See id.*

In addition, the habeas judge observed that the judge who presided over Smith's criminal trial had engaged in a thorough colloquy with Smith regarding his right to choose to testify or to

choose not to testify. *See id.* at *7; Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, Doc. No. 14, App. O, Trial Tr. 54–58 (Jan. 10, 2006). The judge clearly informed Smith that the decision to testify was his and no one else's decision. *See id.* Furthermore, Smith indicated that he was aware of and understood his rights, and had elected not to testify. *See id.* In view of the trial judge's colloquy and Smith's response to the trial judge's questions, it was clear that Smith understood that it was his right to decide not to testify and that he had chosen to waive that right. *See id.* The habeas judge concluded that trial counsel's performance was not deficient with regard to informing Smith of his right to testify, permitting Smith to make the decision to testify or not to testify, and giving Smith advice regarding his decision. *See id.* at *7–*8.

In its review of the decision of the habeas judge on this claim, the Connecticut Appellate Court acknowledged that it was clearly established that Smith had a right to testify at trial. *See Smith*, 148 Conn. App. at 536. The Appellate Court credited the observations of the habeas judge regarding trial counsel's testimony that that he had informed Smith of his right to testify, that Smith understood it was his decision to testify or not to testify, and that Smith voluntarily elected not to testify. *See id.* at 534–35. Moreover, the Appellate Court observed that the judge who presided over Smith's criminal case had engaged in a thorough colloquy with Smith regarding his right to choose to testify or to choose not to testify at trial, and clearly informed Smith that the decision to testify was his and no one else's. *See id.* at 535; Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, Doc. No. 14, App. O, Trial Tr. 54–58 (Jan. 10, 2006). The Appellate Court concluded that the habeas judge had correctly found that trial counsel's advice to Smith regarding whether he should testify or not "constituted sound trial strategy." *Smith*, 148 Conn. App. at 537. Thus, the court held that the habeas judge was right to conclude that trial counsel had not been ineffective in connection with Smith's decision not to testify.

The Connecticut Appellate Court reasonably applied the *Strickland* standard in reviewing Smith's ineffective assistance of counsel claim. The Appellate Court and the habeas judge reasonably concluded that Smith's trial counsel did not perform deficiently when he informed Smith of his right to testify, reviewed the strength of the evidence offered by the prosecutor, explained the potential dangers of testifying, and permitted Smith to make the decision whether or not to testify. Because the determination of the state habeas judge and the Connecticut Appellate Court regarding trial counsel's performance was not an unreasonable application of the first prong of the *Strickland* standard, I deny Smith's petition with respect to his first claim of ineffective assistance of counsel.

### 2. *Presentation of Evidence*

Smith also contends that Attorney Leo Ahern unreasonably neglected to offer any evidence of the effects of muriatic acid on human body parts. In support of that claim in his state habeas petition, Smith argued that evidence on the effects of muriatic acid was central to witness testimony regarding the use of that acid to dissolve the victim's corpse. *See Smith*, 2012 WL 447640, at *6.

During the state habeas proceedings, Attorney Ahern testified regarding his criminal trial experience. *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, Doc. No. 14, App. P, Habeas Tr., 66–67 (Sept. 29, 2011). At the time of the criminal trial in 2005, he had practiced law for approximately twenty-two years. *See id.* He had engaged in practicing various types of law, with an emphasis on criminal defense work. *See id.* He had tried twenty criminal cases to verdict, a number of them involving murder charges. *See id.*

Smith testified at the habeas hearing that he had told Estrella that he had dissolved victim's body in acid. *See id.* at 123. He admitted that he had not actually dissolved the body in acid, but instead had thrown the body into a ditch in the woods. *See id.*

Counsel testified during the habeas proceedings that he had discussed the issue of whether to introduce evidence concerning the effects of muriatic acid on human body parts, and that Smith had wanted to conduct a demonstration during trial. *See id.* at 73–75. Counsel did not think, however, that evidence regarding whether exposure to a large volume of muriatic acid could cause human tissue and internal organs to dissolve would be of any value to Smith's defense. *See id.* Thus, counsel made a decision not to offer any evidence regarding muriatic acid. *See id.* In light of the facts that: (a) Smith in his statement to Estrella did not identify the type of acid that he had allegedly used to dissolve the body, (b) no one ever located the victim's body, (c) evidence of the murder and the disposal of the body did not come from forensic proof, and (d) Smith conceded at the habeas hearing that he did agree to dispose of the body, the habeas judge concluded that it would not have been productive or useful to introduce evidence of the effects of muriatic acid on human flesh and bone. *See Smith*, 2012 WL 447640, at *6.

The habeas judge found trial counsel's testimony at the habeas hearing to be credible and determined that counsel had adopted a legitimate strategy not to offer evidence regarding the effects of muriatic acid because he thought it had no value to Smith's defense. *See id.* A defense counsel's strategic decisions will not support an ineffective assistance claim, as long as those decisions are reasonable. *See Strickland*, 466 U.S. at 689 (petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy" (internal quotation marks omitted)); *Rompilla*, 545 U.S. at 381 (court affords "a heavy measure of deference to counsel's judgments"). Accordingly, the habeas judge concluded that

Smith had not met the deficient performance prong of the ineffective assistance of counsel standard. *See Strickland*, 466 U.S. at 688–89 (to meet deficiency prong, petitioner must overcome a "strong presumption that counsel's conduct f[ell] within the wide range of reasonable professional assistance").

The habeas judge also considered whether Smith had met the prejudice prong of the *Strickland* standard. The judge concluded that because the issue of the effects of muriatic on human flesh and bone was not central to the case, its introduction at trial would not have influenced the jury's determination whether Smith was guilty of the charged offenses. *See Smith*, 2012 WL 447640, at *6. Thus, the judge held that Smith had not shown prejudice from the alleged failure to introduce evidence regarding muriatic acid. *See id.*

The state court's factual findings and credibility determinations are "presumed to be correct," and a petitioner has the "burden of rebutting [that] presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Smith has offered no evidence to rebut the habeas judge's credibility or factual determinations.

I hold that the habeas judge and Connecticut Appellate Court reasonably applied the *Strickland* standard in reviewing Smith's ineffective assistance of counsel claim. In deciding not to introduce testimony or evidence regarding the effects of exposure of human body parts to muriatic acid, trial counsel made a strategic choice that fell within the range of competent professional legal assistance. *See Cullen*, 563 U.S. at 195 (noting the "wide latitude counsel must have in making tactical decisions" and affirming that "[b]eyond the general requirement of reasonableness, 'specific guidelines are not appropriate'" (quoting *Strickland*, 466 U.S. at 688–89)). Furthermore, the habeas judge and Appellate Court reasonably concluded that the outcome of the trial would not have been different even if counsel had introduced evidence regarding

muriatic acid. Therefore, I deny Smith's habeas petition with regard to the second claim of ineffective assistance of counsel.

**V.      CONCLUSION**

The Petition for Writ of Habeas Corpus [**Doc. No. 1**] is **DENIED**. The Clerk is directed to enter judgment in favor of the respondent and close the case.

I conclude that Smith has not shown that he was denied a constitutionally or federally protected right. Hence, any appeal from this order would not be taken in good faith, and a certificate of appealability will not issue.


So ordered this 23rd day of August 2017 at Bridgeport, Connecticut.


/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge